*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES of America, | : |
| v. | : Crim. Action No. 18-380 (FLW) |
|  | : |
| James RANDOLPH, | : **OPINION** |
| Defendant. | : |

**WOLFSON, United States District Judge:**

After Defendant James Randolph ("Defendant") pled guilty to a one-count indictment charging him with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), this Court held a sentencing hearing, wherein Defendant was sentenced to a term of imprisonment of 24 months, a within Guidelines sentence, based upon an offense level of 14. As part of Defendant's sentence, I found that Defendant was not subject to the sentencing enhancement for firearms offenses, under U.S.S.G. § 2K2.1(a)(4)(A), concluding that his prior conviction under New Jersey state law for aggravated assault did not qualify as a "crime of violence" under the Sentencing Guidelines. During the course of the sentencing hearing, however, I reserved the right to supplement my oral ruling by written opinion. The present opinion serves to supplement the my findings as to whether Defendant's prior conviction for aggravated assault qualifies as "crime of violence" under the Sentencing Guidelines.

**I.   BACKGROUND**

On November 27, 2019, Defendant pled guilty to a one-count indictment charging him with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

The U.S. Probation Office determined that an advisory sentencing range of 30 to 37 months applies, and the Government sought a sentence at the top of that range.

On March 21, 2019, Defendant submitted a memorandum outlining his position as to the sentence to be imposed and objecting to the Probation Office's Guideline calculation. The Government submitted a sentencing memorandum in opposition on March 25, 2019.[1] The parties' arguments at sentencing focused on whether Defendant's prior state conviction for aggravated assault was a "crime of violence" under U.S.S.G. § 2K2.1(a)(4)(A)—and thus, whether Defendant would be subject to a base-level sentencing enhancement for firearms offenses. The Sentencing Guidelines assign a base offense level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). The Government argues that this enhancement applies because of Defendant's prior conviction for aggravated assault under N.J.S.A. 2C:12-1(b)(7).[2] Defendant, in contrast, argues the enhancement is not appropriate, because his aggravated assault conviction was not a "crime of violence," since N.J.S.A. § 2C:12-1(b)(7) allows for a conviction based on "extreme indifference recklessness," which is broader than the generic version of the crime. The issue presented has been addressed by a number of courts with no simple answer. Currently, two cares are on appeal to the Third Circuit, which will yield a decision on this knotty question.

---

[1] Defendant filed his reply on March, 29, 2019.

[2] Under the statute, a person is guilty of aggravated assault if he "[a]ttempts to cause significant bodily injury to another or causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life recklessly causes such significant bodily injury." N.J.S.A. § 2C:12-1(b)(7),

2

At sentencing, I determined that Defendant's prior conviction for aggravated assault was not a "crime of violence," and thus the base offense level was 14; I imposed a within Guidelines sentence of 24 months, consistent with that offense level.

## II.   LEGAL STANDARD

This Court has jurisdiction pursuant to 18 U.S.C. § 3231.  *See United States v. Chapman*, 866 F.3d 129, 131 (3d Cir. 2017).  "In sentencing a defendant, district courts follow a three-step process: At step one, the court calculates the applicable Guidelines range, which includes the application of any sentencing enhancements." *United States v. Wright,* 642 F.3d 148, 152 (3d Cir. 2011). "At step two, the court considers any motions for departure and, if granted, states how the departure affects the Guidelines calculation." *Id.* "At step three, the court considers the recommended Guidelines range together with the statutory factors listed in 18 U.S.C. § 3553(a) and determines the appropriate sentence, which may vary upward or downward from the range suggested by the Guidelines." *Id.*  In calculating the Guidelines sentence, the Third Circuit has "explained that, '[a]s before [*United States v. Booker*, 543 U.S. 220 (2005)], the standard of proof under the guidelines for sentencing facts continues to be preponderance of the evidence.'" *United States v. Ali*, 508 F.3d 136, 143 (3d Cir. 2007) (citation omitted). The Government bears the burden of demonstrating that a sentence should be calculated by using a higher base offense level. *United States v. Howard*, 599 F.3d 269, 271–72 (3d Cir. 2010). The present dispute concerns the applicable Guidelines range at step one, and thus, the Government bears the burden of demonstrating, by a preponderance of the evidence, that Defendant's prior conviction triggers the sentencing enhancement in U.S.S.G. § 2K2.1(a)(4)(A).

## III.   DISCUSSION

According to the Government, Plaintiff's prior conviction for aggravated assault qualifies as a "crime of violence" under both clauses in the Guidelines that define the term: the "elements clause," U.S.S.G. § 4B1.2(a)(1), and the "enumerated offense clause," U.S.S.G. § 4B1.2(a)(2). The Guidelines define a "crime of violence," in relevant part, as:

> (a) . . . any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2.

Before analyzing the issues, I must first decide the appropriate standard. There are two alternative standards that courts employ when evaluating whether a prior conviction constitutes a "crime of violence" under either the elements clause or the enumerated offense clause: the "categorical approach" and the "modified categorical approach." *United States v. Brown*, 765 F.3d 185, 189 (3d Cir. 2014). Under the categorical approach, the sentencing court must "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood. The prior conviction qualifies as . . . [a] predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps v. United States*, 570 U.S. 254, 257 (2013). The alternative "modified categorical approach"—which allows a court to look past the elements of the crime to the facts of the case—applies only if a statute is divisible. A divisible statute "lists multiple, alternative elements and . . . effectively sets forth several different crimes." *United States v. Hemingway*, 734 F.3d 323, 331 (4th Cir. 2013) (quoting *Descamps*, 570 U.S. at 264).

Here, Defendant was convicted under N.J.S.A. § 2C:12-1(b)(7), which contains different *mens rea* alternatives, but does not "set forth several different crimes." I will, therefore, apply the categorical approach and look only to the elements of the New Jersey aggravated assault statute in evaluating whether Defendant's prior conviction was for a "crime of violence." *See United States v. Hedgeman*, No. 16-537, 2018 WL 534156, at *3 (D.N.J. Jan. 23, 2018) (applying categorical approach to analysis of same statute at issue here); *see also United States v. Barcenas-Yanez*, 826 F.3d 752, 758 (4th Cir. 2016) (holding that the mere fact that Texas aggravated assault statute sets out alternative means of satisfying *mens rea* requirement did not render it "divisible" and thereby permit sentencing court to utilize modified categorical approach in deciding whether prior conviction was for "crime of violence"). Indeed, both the Government and Defendant concede that, here, the categorical approach is appropriate.

## A. Elements Clause

The Government first argues that Defendant's aggravated assault conviction is crime of violence under § 4B1.2(a)(1), the elements clause. In the context of determining whether an offense qualifies as a "crime of violence" under the elements clause, "a court simply asks 'whether the state crime has the use or threat of physical force [against the person of another] as an element of the offense.'" *Brown*, 765 F.3d at 189 (quoting *United States v. Remoi*, 404 F.3d 789, 794 (3d Cir. 2005)). "If the statute has this element, or 'defines the crime more narrowly,' then the conviction can serve as a predicate offense." *Chapman*, 866 F.3d at 134 (quoting *Descamps*, 133 S. Ct. at 2283). Conversely, if the state statute "'sweeps more broadly' than the federal definition, a conviction under it is not a career offender predicate even if the defendant actually committed the offense in a way that involved the use (or threatened use) of physical force against another." *Brown*, 765 F.3d at 189 (citing *Descamps*, 133 S. Ct. at 2283).

5

1. Third Circuit Law

Traditionally under Third Circuit law, a statute that permits conviction based on a *mens rea* lower than intent is not sufficient to qualify as a "crime of violence" under the elements clause. *See Popal v. Gonzales*, 416 F.3d 249, 254 (3d Cir. 2005) ("It is now settled law in this Circuit that an offender has committed a 'crime of violence'…only if he acted with an intent to use force") (citing *Tran v. Gonzales*, 414 F.3d 464 (3d Cir. 2005); *United States v. Parson*, 955 F.2d 858, 866 (3d Cir. 1992)). As the Third Circuit explained in evaluating the Sentencing Guidelines' elements clause,

> We held in *Popal* that [a] simple assault [conviction which] requires a minimum *mens rea* of recklessness rather than intent[ ] is not a crime of violence. The reasoning behind [that] decision was hardly new or innovative. Indeed, we held therein that it is "settled law in this Circuit that an offender has committed a 'crime of violence' only if he acted with an intent to use force." *Popal*, 416 F.3d at 254[; s]*ee also United States v. Parson*, 955 F.2d 858 (3d Cir. 1992). *Popal* limits categorical crimes of violence to offenses committed through intentional use of force against another rather than reckless or grossly negligent conduct.

*United States v. Otero*, 502 F.3d 331, 335 (3d Cir. 2007). These cases stand for the proposition that, under the elements clause, a crime requiring only recklessness as to the "use" of force will not qualify as a crime of violence. As such, under Third Circuit precedent, a conviction under N.J.S.A. § 2C:12-1(b)(7) cannot qualify as a crime of violence because it can be satisfied by recklessness alone, rendering the statute overbroad under the Sentencing Guidelines.

2. *Voisine*

The parties now dispute whether a recent U.S. Supreme Court case, *Voisine v. United States*, 136 S.Ct. 2272 (2016), has undermined this longstanding precedent. In *Voisine*, the Supreme Court addressed the issue of "whether misdemeanor assault convictions for reckless conduct trigger the statutory firearms ban [18 U.S.C. § 922(g)(9)]." *Id.* at 2276. That statute is triggered if a defendant had a prior conviction for a "misdemeanor crime of domestic violence,"

6

which requires that the offense have "as an element, the use or attempted use of physical force." *Id.* at 2278. After considering the definition of the word "use," *id.* at 2278–80, and the legislative history of § 922(g)(9), *id.* at 2280–82, the Court concluded that the statute encompassed domestic violence-related convictions based on reckless conduct. The Supreme Court reasoned that the ordinary usage of the word "use" in the statute did not limit the provision to specific intent crimes: "A person who assaults another recklessly 'use[s]' force, no less than one who carries out that same action knowingly or intentionally." *Id.* at 2280. To illustrate its reasoning, the Court pointed to examples of reckless conduct in the domestic violence context, such as a person who "throws a plate in anger against the wall near where his wife is standing" or "slams the door shut with his girlfriend following close behind," that are ordinarily understood to involve the "use" of force. *Id.* at 2279. The Court further concluded that construing § 922(g)(9) to exclude crimes committed with a reckless state of mind would "substantially undermine the provision's design" because Congress enacted § 922(g)(9) in order to prohibit "domestic abusers convicted under run-of-the-mill misdemeanor assault and battery laws" from possessing guns and "fully two-thirds of such state laws extend to recklessness." *Id.* at 2278, 2280–81.

However, the Supreme Court expressly left open the question of whether the reckless use of force would be sufficient to meet the requirements of other statutes, such as the Armed Career Criminals Act ("ACCA") U.S.C. § 16(a), a statute with an elements clause that substantively mirrors the Sentencing Guidelines.[3] *Id.* at 2279–80. In a footnote, the Supreme Court referenced

---

[3] While ACCA uses the term "violent felony," as opposed to the concept of a "crime of violence" under the Guidelines, courts have interpreted those two concepts analogously. *United States v. Hopkins*, 577 F.3d 507, 511 (3d Cir. 2009) ("While the Court was not called upon to construe the career offender provision of the Sentencing Guidelines, the definition of a violent felony under

7

§ 922(g)(9) and 18 U.S.C. § 16(a), noting "[c]ourts have sometimes given those two statutory definitions divergent readings in light of the differences in their contexts and purposes, and we do not foreclose that possibility with respect to their required mental states." *Id.* at 2280 n.4. As such, the issue remains open as to whether a reckless application of force is sufficient to meet the requirements of the elements clause at issue here.

        3. *Johnson* and *Castleman*

Prior to *Voisine*, the Supreme Court indicated that its rulings regarding the statutory firearms ban for those convicted of domestic violence misdemeanors might not apply to the interpretation of similarly worded statutes, such as the ACCA or the Sentencing Guidelines. Two decisions are relevant in that regard. First, in *Johnson v. United States*, the Court ruled that the Florida felony offense of battery by "[a]ctually and intentionally touch[ing]" another person, which could be committed by any intentional physical contact, no matter how slight, does not have "as an element the use ... of physical force against the person of another," § 924(e)(2)(B)(i), and thus does not constitute a "violent felony" under ACCA. *Johnson v. United States*, 559 U.S. 133, 140-43 (2010). According to the Court, "'physical force' itself normally connotes force strong enough to constitute 'power,'" a description that does not apply to an offense that can be committed with only slight physical contact. *Id.* at 142.

In *United States v. Castleman*, 572 U.S. 157 (2014), the Supreme Court was faced with a very similar question, but this time with regards to § 922(g)(9). The question there was whether § 922(g)(9) encompasses a "misdemeanor crime of domestic violence" that can be satisfied by a

---

the ACCA is sufficiently similar to the definition of a crime of violence under the Sentencing Guidelines that authority interpreting one is generally applied to the other, as demonstrated by the Supreme Court's remand order in this case.").

mere offensive touching. In reaching the conclusion that § 922(g)(9) did cover such conduct, the Court distinguished *Johnson*, stating that the purposes behind ACCA and § 922(g)(9) were fundamentally different, as "'Domestic Violence' is not merely a type of 'violence'; it is a term of art encompassing acts that one might not characterize as 'violent' in a nondomestic context." *Castleman*, 572 U.S. at 165. § 922(g)(9) was, therefore, enacted to keep domestic abusers from owning guns by specifically capturing a category of state common law offenses, i.e. "garden—variety assault or battery misdemeanors," which in most states, encompass reckless infliction of bodily harm. *Voisine*, 136 S.Ct. at 1180 (citing *Castleman*, 572 U.S. at 160, 164). Thus, as the *Castleman* Court concluded, it is not inconsistent to rule that a "misdemeanor crime of domestic violence" in 922(g)(9) captured far more (and less violent) conduct than "violent felony" in ACCA, because the contexts and purposes animating the two statutes were fundamentally different.

4. Application

The Government asks the Court to ignore any distinction between the Sentencing Guidelines and § 922(g)(9), the statutory firearms ban, and find that Defendant's aggravated assault conviction based on a *mens rea* of recklessness constitutes a crime of violence under the Guidelines. Based on the weight of this precedent, I am unpersuaded that the Supreme Court's analysis in *Voisine* is applicable here, and, so, decline to find that Defendant's prior conviction is a "crime of violence."

In expressly limiting its holding to the statutory firearms ban in *Voisine*, the Supreme Court recognized that "crime of violence" might have different meanings depending on the context. And indeed, "the Supreme Court had previously defined terms that are used identically in the ACCA and the Misdemeanor Domestic Violence Act to have different meanings." *United*

9

*States v. Brown*, 249 F. Supp. 3d 287, 298 (D.D.C. 2017) (quoting *United States v. Sabetta*, 221 F.Supp.3d 210, 223 (D.R.I. Oct. 24, 2016)). Whereas, as *Castleman* noted, § 922(g)(9) was enacted to keep domestic abusers from owning guns by specifically capturing a category of state law offenses, *i.e.* "garden—variety assault or battery misdemeanors," which in most states, encompass reckless infliction of bodily harm, there is no indication of such intent behind the Sentencing Guidelines' definition of "crime of violence." Rather, U.S.S.G. § 2K2.1(a)(4)(A) serves to keep those who have committed a firearms offense *and* a prior violent felony off the street, excluding them from the community by adding substantial enhancements to their Guidelines range for sentencing. Moreover, that U.S.S.G. § 2K2.1(a)(4)(A) is predicated on a prior *felony* conviction, whereas § 922(g)(9) is predicated only on a prior *misdemeanor*, is significant. As another court that has considered the issue has put it, "the lower *mens rea* sufficient for a predicate *misdemeanor* is not necessarily sufficient for a violent *felony*" because "when Congress defines a misdemeanor, it intends a lower bar for culpability than when it defines a felony, even when it uses some of the same words to describe both types of offenses." *Brown*, 249 F. Supp. 3d at 298 (citing *Sabetta*, 221 F.Supp.3d at 223, 2016 WL 6157454, at *9)).

  *Voisine* is also distinguishable for another reason: the text of the Sentencing Guidelines differs from the text of the statutory firearms ban in at least one respect that is relevant to the question of intent. In *United States v. Haines*, 296 F. Supp. 3d 726 (E.D. Pa. 2017), for example, another court in this Circuit considered whether the defendant's prior aggravated assault conviction triggered the career offender enhancement under ACCA. The court noted that ACCA, just like the Sentencing Guidelines, requires the "attempted, threatened, or actual use of physical

force *against the person of another*." *Id.* at 734 (emphasis in original). In contrast, § 922(g) "does not require the use of force *against* anyone or anything." *Id.* As the *Haines* court found,

> a person who engages in indiscriminate dangerous conduct in a domestic violence setting, such as the throwing of plates or the slamming of a door in the proximity of a family member, can ordinarily be understood to be '*us[ing]* physical force.' But it is far more tenuous to argue that such a person is '*us[ing]* physical force *against* the person of another' when the offender did not specifically intend to direct the harmful conduct toward any person.

*Id.* Indeed, the Third Circuit has found the "against" phrase significant in excluding various reckless offenses from the scope of a similarly worded statute because "the use of force against the person or property of another 'requires active employment' and 'naturally suggests a higher degree of intent than negligent or merely accidental conduct.'" *Oyebanji v. Gonzales*, 418 F.3d 260, 263 (3d Cir. 2005) (Alito, J.). Here, the aggravated offense committed by Defendant only requires recklessness, which is a lesser degree of intent than § 922(g) requires. Thus, "[i]n light of these differences between [the firearms ban and the Sentencing Guidelines], the Court is convinced that it should not extend *Voisine* to § 4B1.2(a) in contravention of established Third Circuit case law." *Haines*, 296 F. Supp. 3d at 735; *see also Bennett v. United States,* No. 16-251, 2016 WL 3676145, at *3 (D. Me. July 6, 2016), *aff'd*, 868 F.3d 1 (1st Cir. 2017) ("[T]he logic and language of the Supreme Court's 2014 decision in *Castleman* make clear that the statutory interpretation of [the firearms ban and ACCA] must be undertaken separately").

As such, I follow the lead of those courts that have concluded that mere "linguistic similarity" between § 922(g) and the elements clause of the Sentencing Guidelines is not sufficient for *Voisine* to control the outcome. *See Bennett v. United States*, 868 F.3d 1, 23 (1st Cir. 2017) (declining to extend *Voisine*'s interpretation of § 922(g) to the definition of "violent felony" under the ACCA based on the rule of lenity and ambiguity created by differences in the text and purpose of the two statutes); *Haines*, 296 F. Supp. 3d at 735 (finding that defendant's

11

prior conviction for aggravated assault in Pennsylvania did not constitute a "crime of violence" under the Sentencing Guidelines); *United States v. Butler*, 253 F. Supp. 3d 133, 148–49 (D.D.C. 2017); *Brown*, 249 F. Supp. 3d at 297 (finding that assault with a deadly weapon with intent to kill is "not a 'violent felony' under ACCA's elements clause" because it can be accomplished by *mens rea* lower than intent).

It is true, as the Government points out, that a number of courts that have dealt with the issue in the wake of *Voisine*, have found that convictions for reckless conduct can qualify as "crimes of violence." For instance, in *United States v. Hedgeman*,[4] the court found that the Supreme Court's analysis in *Voisine* "undermined any prior precedent that holds to the contrary as to an element of recklessness." 2018 WL 534156, at *1 ((citing *United States v. Verwiebe*, 874 F.3d 258, 262 (6th Cir. 2017) (holding that a conviction for a reckless offense may qualify as a crime of violence for the purposes of the Guidelines); *United States v. Pam*, 867 F.3d 1191, 1207-08 (10th Cir. 2017) (holding that a conviction for a crime that is based upon reckless conduct was sufficient to satisfy the physical force requirements of a violent felony under the ACCA in light of *Voisine*); *United States v. Fogg*, 836 F.3d 951, 956 (8th Cir. 2016) (finding that reckless conduct constitutes the use of force under the ACCA); *United States v. Howell*, 838 F.3d 489, 500-01 (5th Cir. 2016) (holding that the mental state of recklessness is sufficient for an offense to qualify as a crime of violence under U.S.S.G. § 4B1.2(a)(1))). However, none of these cases seriously grappled with the crucial differences in statutory purpose, and simply found that

---

[4] That decision was appealed to the Third Circuit, Appeal No. 18-1225, but has been stayed pending decision in *United States v. Santiago*, Appeal No. 16-4194, and *United States v. Harris*, Appeal No. 17-1861, which are set to be argued in the Third Circuit, *en banc*, on May 15, 2019. The issue on appeal is limited to whether a crime of recklessness can be "crime of violence" or "violent felony" under the elements clause of the Guidelines (*Santiago*) or ACCA (*Harris*).

12

because the Sentencing Guidelines or ACCA were similarly worded to § 922(g), *Voisine* should control. This conclusion, for the reasons already stated, is not persuasive.

The Government separately attempts to rely on a pre-*Voisine* case, *United States v Horton*, to argue that Defendant's aggravated assault conviction qualifies as a "crime of violence." 461 Fed. Appx. 179, 184 (3d Cir. 2012). There, the Third Circuit determined the Defendant's conviction of third-degree aggravated assault under N.J.S.A. 2C:12-1, the same broad assault statute at issue here, was a crime of violence under the guidelines. However, in that case, it was unclear under what specific provision of the statute the defendant had been convicted, so the court applied the modified categorical approach because the entire statute "proscribes at least seven separately enumerated forms of third-degree aggravated assault, not all of which appear to qualify as crimes of violence." *Id*. at 183. Because of this uncertainty, the court looked to the facts behind defendant's convictions, and found that he had, in fact, intentionally struck his victim in the face. *Id.* Here, unlike in *Horton*, there is no dispute that Defendant was convicted under N.J.S.A. 2C:12-1(b)(7), which does not enumerate separate forms of aggravated assault, and it would, hence, be inappropriate to look to the facts behind Defendant's conviction. *See Hedgeman*, 2018 WL 534156, at *1 (applying categorical approach to conviction under N.J.S.A. 2C:12-1(b)(7)); *See also United States v. Burris*, 912 F.3d 386, 392 (6th Cir. 2019) ("The question for the sentencing court in the elements-clause context is whether every defendant convicted of that state or federal felony must have used, attempted to use, or threatened to use physical force against the person of another in order to have been convicted, not whether the particular defendant actually [used force . . . ] in that particular case.") (citing *Mathis v. United States*, 136 S.Ct. 2246, 2249 (2016)).

In sum, because I find that the reasoning of *Voisine* does not extend to § 4B1.2(a)(1) of the Guidelines, it does not disturb established Third Circuit law that an offender has committed a "crime of violence" only if he acted with an intent to use force. As such, Defendant's conviction

for aggravated assault, which permitted conviction for mere reckless conduct, is not a "crime of violence" under the elements clause of the Guidelines.

### B. Enumerated Offense Clause

In the alternative, the Government argues that because aggravated assault is one of the offenses listed under the "enumerated offense clause," § 4B1.2(a)(2), Defendant's prior conviction for aggravated assault qualifies as a "crime of violence" under that subsection. Under the enumerated offense clause, a court compares a state offense to the modern "generic" view of the offense, "roughly corresponding to the definitions of [those listed enumerated offenses] in a majority of the States' criminal codes," "regardless of technical definitions and labels under state law." *Taylor v. United States*, 495 U.S. 575, 589 (1990) (discussing enumerated offense of burglary). If the state offense criminalizes more conduct than the generic offense, then it does not qualify as a predicate crime of violence. *See United States v. Mathews*, 453 F.3d 830, 833 n.7 (7th Cir. 2006).

Here, there is no dispute that a substantial majority of state jurisdictions require more than extreme indifference recklessness to commit aggravated assault. *See United States v. Garcia–Jimenez*, 807 F.3d 1079, 1086 (9th Cir. 2015) ("That a substantial majority of U.S. jurisdictions require more than extreme indifference recklessness to commit aggravated assault is a compelling indication that the federal generic definition of aggravated assault also requires more than that mental state."). Relying on the majority of states' approach, a number of courts have found that aggravated assault statutes that allow for conviction for reckless conduct are not "crimes of violence" under the enumerated offense clause; in fact, in *Garcia-Jimenez*, the Ninth Circuit specifically concluded that the same broad New Jersey aggravated assault statute at issue here, N.J.S.A. 2C:12–1(b)(1), was broader than the generic definition of the offense. *Id. See also*

14

*United States v. Simmons*, 917 F.3d 312, 318 (4th Cir. 2019), *as amended* (Mar. 6, 2019) (state aggravated assault charge that "can be committed with a *mens rea* equal to or less than recklessness, the crime is categorically broader than the generic offense of aggravated assault and cannot be deemed a 'crime of violence' under the [enumerated offense clause of the] Sentencing Guidelines");[5] *Barcenas-Yanez*, 826 F.3d at 756 ("[I]nclusion of a mere reckless state of mind [in Texas aggravated assault statute] renders the statute broader than the generic offense.").

However, the Government argues that subsection (b)(7) is a near-verbatim recitation of the Model Penal Code's definition of aggravated assault, which states that a person commits aggravated assault when he "attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." Model Penal Code § 211.1(2). Although the Model Penal Code can serve as an aid in determining the generic definition of a crime, the Third Circuit has definitively held that when there is a conflict between the Model Penal Code definition and the body of state law, the "the most important factor in defining the generic version of an offense is the approach of the majority of state statutes defining the crime." *United States v. Graves*, 877 F.3d 494, 503–04 (3d Cir. 2017).

---

[5] In *Simmons*, the Fourth Circuit found that conviction under North Carolina's aggravated assault statute did not constitute a "crime of violence" under both the enumerated offense clause and the elements clause of the Guidelines. The court followed *Garcia-Jimenez* in its enumerated offense clause analysis; however, in its elements clause analysis, the Court simply noted that the North Carolina statute at issue allowed conviction for mere culpable negligence, and whatever the proper interpretation of *Voisine*, its holding did not extend beyond crimes of recklessness. *Simmons*, 917 F.3d at 321.

15

Thus, although aggravated assault is specifically listed in the enumerated offense clause, because the majority of states' aggravated assault statutes require a *mens rea* greater than extreme indifference reckless, the enumerated offense clause does not apply to Defendant's conviction. Accordingly, because Defendant's prior conviction does not qualify as a "crime of violence" under either the elements clause or the enumerated offense clause, the Court does not assign Defendant the heightened base-offense level under § 2K2.1(a)(4)(A).

## IV. **CONCLUSION**

For the foregoing reasons, the Court finds that Defendant's prior conviction for aggravated assault, under N.J.S.A. 2C:12-1(b)(7), does not qualify as a crime of violence under U.S.S.G. § 2K2.1(a)(4)(A), and thus, that base-level sentencing enhancement is not appropriate.

Dated: May 10, 2019                                        /s/ Freda L. Wolfson
                                                           Hon. Freda L. Wolfson
                                                           United States District Judge